*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-1532**

Corey John Schoenberg,
Respondent,

vs.

Commissioner of Public Safety,
Appellant.

**Filed July 21, 2014
Reversed
Stoneburner, Judge**[*]

Stearns County District Court
File No. 73-CV-13-2755

Robert D. Stoneburner, Stoneburner Law Office, Paynesville, Minnesota (for respondent)

Lori Swanson, Attorney General, James E. Haase, Assistant Attorney General, St. Paul, Minnesota (for appellant)

Considered and decided by Chutich, Presiding Judge; Rodenberg, Judge; and Stoneburner, Judge.

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**STONEBURNER**, Judge

Appellant Minnesota Commissioner of Public Safety (commissioner) revoked respondent Corey John Schoenberg's driver's license after he was arrested for driving while impaired and a breath test showed that his alcohol concentration was 0.09. The district court rescinded the commissioner's revocation solely on the ground that criminalization of test refusal made Schoenberg's consent to the breath test involuntary for Fourth Amendment purposes. Based on the supreme court's subsequent ruling that consent to testing is determined by examination of the totality of the circumstances and because the record in this case shows that under the totality-of-circumstances test Schoenberg's consent was not coerced and was voluntary, we reverse.

## FACTS

Stearns County Sheriff's Deputy Andrew Struffert stopped Schoenberg's vehicle for failing to come to a complete stop at a stop sign and for having an obscured license plate. Deputy Struffert noticed that Schoenberg's eyes were bloodshot and watery and that he smelled of alcohol. Schoenberg admitted that he had been drinking. Schoenberg failed several field sobriety tests, and a preliminary breath test indicated an alcohol concentration of .092.

Deputy Struffert arrested Schoenberg for driving while impaired and read the implied-consent advisory to him. Schoenberg indicated that he understood the advisory and that he wanted to speak with an attorney. Deputy Struffert then took Schoenberg to the Paynesville Police Department so that he could use a telephone to contact an attorney.

After speaking with an attorney, Schoenberg told Deputy Struffert that he would submit to a chemical test. A test of Schoenberg's breath revealed an alcohol concentration of .09.

Based on the test result, the commissioner revoked Schoenberg's driver's license. Schoenberg petitioned the district court for judicial review of the commissioner's revocation of his license. *See* Minn. Stat. § 169A.53, subd. 2 (2012). The district court conducted an implied-consent hearing at which Schoenberg was present and represented by counsel. At the outset of the hearing, Schoenberg's attorney identified two issues: the validity of the investigatory stop and the "*McNeely* challenge."

Deputy Struffert testified about the basis of the stop and described the circumstances surrounding the breath test. He testified that he read the implied-consent advisory, which Schoenberg said he understood. Deputy Struffert gave Schoenberg access to a telephone book and telephone, and Schoenberg, after speaking to an attorney, said that he would take a breath test. The test was administered by Deputy Peggy Engler, who is a certified operator of the testing device. Deputy Struffert testified that Schoenberg was respectful and cooperative throughout the process. Deputy Struffert confirmed that he did not seek a warrant to obtain Schoenberg's breath sample.

Schoenberg called Deputy Engler, who confirmed that no warrant was obtained before the test was administered. Schoenberg's father testified for Schoenberg and established that Schoenberg is a college student who was, at the time of the stop, home on a visit, driving a car registered to father. He testified that the license plate on the vehicle was not obscured because it had been very recently wiped off so that the new registration

3

stickers could be applied. Schoenberg testified on his own behalf. He confirmed that he is a college student. He corroborated his father's testimony about the license plate and denied that he had failed to come to a complete stop at a stop sign. He testified that he did not dispute Deputy Struffert's assertion that he had failed to stop "because [Deputy Struffert] had a badge and a gun." Schoenberg testified the he cooperated with the test because he was told that refusal would be a crime. He stated, "I decided to take the test." Schoenberg introduced the squad-car video of the stop, asserting that it depicted a full stop.

The district court issued an order in which it determined that Deputy Struffert had probable cause that Schoenberg had not come to a complete stop at the stop sign, and that his stop of Schoenberg's vehicle was lawful. But the district court rescinded the revocation of Schoenberg's license based solely on its determination that criminalization of test refusal made Schoenberg's consent to testing involuntary, resulting in an unconstitutional warrantless search of Schoenberg's breath.

Subsequently, the supreme court issued its opinion in *State v. Brooks*, 838 N.W.2d 563 (Minn. 2013), *cert. denied*, 134 S. Ct. 1799 (2014), rejecting the assertion that criminalization of test refusal makes consent to testing involuntary as a matter of law and setting out a totality-of-circumstances test to be applied on a case-by-case basis to determine whether consent is voluntary. This appeal followed.

**D E C I S I O N**

The Minnesota and United States Constitutions protect citizens from unreasonable searches. U.S. Const. amend. IV; Minn. Const. art. 1, § 10. A breath test is a search

4

requiring a warrant or an exception to the warrant requirement. *Skinner v. Ry. Labor Execs.' Ass'n*, 489 U.S. 602, 617, 109 S. Ct. 1402, 1413 (1989). The exception relied on by the commissioner in this case is consent. "[P]olice do not need a warrant if the subject of the search consents." *Brooks*, 838 N.W.2d at 568. "For a search to fall under the consent exception, the State must show by a preponderance of the evidence that the defendant freely and voluntarily consented [to a search]." *Id.*

In this case, the district court concluded, as a matter of law, that Schoenberg did not voluntarily consent to the breath test solely because "[t]he imposition of criminal sanction upon test refusal plainly serves to coerce an individual to provide his actual consent." In *Brooks*, which was issued four months after the district court's order, the supreme court expressly rejected the district court's reasoning. *See id.* at 570. The supreme court held that a driver's consent is not coerced as a matter of law simply because the driver would face criminal consequences if he were to refuse testing. *Id.* Instead, "[w]hether consent is voluntary is determined by examining the totality of the circumstances." *Id.* at 568 (quotation omitted). In light of *Brooks*, the district court erred by holding that Schoenberg's consent was not voluntary as a matter of law. *See id.* at 570.

In *Brooks*, the supreme court stated that the relevant circumstances to be considered in determining voluntariness of consent include "'the nature of the encounter, the kind of person the defendant is, and what was said and how it was said.'" *Id.* at 569 (quoting *State v. Dezso*, 512 N.W.2d 877, 880 (Minn. 1994)). When considering the nature of the encounter, a court should ask how the police came to suspect the driver was

5

under the influence, whether police read the driver the implied-consent advisory, and whether he had the right to consult with an attorney. *Id.* Under this test, the supreme court identified three primary reasons why the record established that Brooks's consent was voluntary and not coerced: (1) Brooks was read the implied-consent advisory, which "made clear to him that he had a choice of whether to submit to testing"; (2) Brooks had "the ability to consult with counsel"; and (3) Brooks "was neither confronted with repeated police questioning nor was he asked to consent after having spent days in custody." *Id.* at 571-72. The supreme court noted that "nothing in the record suggests that Brooks was coerced in the sense that his will had been overborne and his capacity for self-determination critically impaired." *Id.* at 571 (quotation marks omitted).

Applying the factors delineated in *Brooks* to this case, the undisputed facts establish that Schoenberg's consent to testing was voluntarily. Schoenberg, a college student, was read the implied-consent advisory and indicated that he understood it; he was given the opportunity to speak with an attorney; and he "decided to take the test." Although his testimony demonstrates that the criminal penalty for refusal weighed in his decision, nothing in the record suggests any circumstance that would have overborne his will or his capacity for self-determination. Under the totality of the circumstances, we conclude that the undisputed evidence in the record establishes that the commissioner met the burden to prove by a preponderance of evidence that Schoenberg voluntarily consented to the breath test. In light of that conclusion, we need not consider the commissioner's arguments that Schoenberg consented to chemical testing as a condition of driving in Minnesota, that *McNeely* did not invalidate Minnesota's implied-consent

6

law, that chemical testing under the implied-consent law is *per se* reasonable, or that the exclusionary rule does not apply.

**Reversed.**